ALBANY,
Jan. 1831.

The People
v.
Brush.

## THE PEOPLE *vs.* BRUSH, impleaded. &c.

A *sheriff's bond* that he will execute the duties of his office *without fraud, deceit, or oppression*, is broken, if he be guilty of any *default* or *misconduct*.

Where a contract provides for the performance or omission of a *single act*, a breach in the words of the contract, either negatively or affirmatively, or in words co-extensive with the import or effect of the contract, is sufficient; but where it requires many things to be performed or omitted, the performance or omission of any one of which would constitute a breach, a *particular breach* must be specified in the assignment; and accordingly, *it was held*, in this case, where the condition of the bond was that a *sheriff* should *in all things* perform the duties of his office, and it was assigned for a breach that he did not well, &c. in all things perform, &c. that the breach was not well assigned.

Although one breach be bad, if there be a breach well assigned in the same count of the declaration, the plaintiff will notwithstanding be entitled to judgment on demurrer, but will not be permitted to assess damages on the defective breach.

In an action against a sheriff and his sureties, for not paying over monies received from *presidents of courts martial*, it is not necessary in the breach to state the *names* of the presidents, nor by whom, or under what authority they were appointed; a general reference to the act of the legislature under which the courts martial were held is sufficient.

Nor is it necessary in such action, where a suit against the sheriff and a recovery against him are averred, to allege *notice* to the sureties of such suit.

It is no cause of demurrer to a breach, that the plaintiff claims more than he is entitled to.

It is no answer to an action on a sheriff's bond, that he is sought to be charged for the non-performance of duties created subsequently to the act under which the bond is executed, provided that such duties existed at the date of the bond. If new duties were imposed subsequently to the giving of the bond, *it seems* it would be otherwise.

DEMURRER to declaration. The declaration is in debt on bond, bearing date the 12th February, 1819, reciting that Gilbert Ketcham was appointed sheriff of Dutchess on the 9th day of February, then instant, and conditioned that he "should well and faithfully, in all things, perform and execute the office of sheriff of the county of Dutchess, during his continuance in the said office by virtue of the said appointment, without fraud, deceit, or oppression." It is executed by Ketcham, the defendant, and one other person. Two *breaches* are assigned : *First,* that Ketcham did not well and

faithfully, in all things, perform and execute the office of sheriff of the said county of Dutchess, during his continuance in the said office by virtue of the said appointment, without fraud, deceit, or oppression, but wholly neglected and refused so to do, contrary to the form and effect of the condition of the said writing obligatory; and, *Second,* that on the 11th day of December, 1819, Ketcham, as such sheriff, had and received, to and for the use of the plaintiffs, the sum of $500, being the amount of certain military fines paid over to him by certain presidents of courts martial, pursuant to the act entitled, "An act to organize the militia," passed the 21st April, 1818, and the further sum of $500, being the amount of other military fines, collected by him on warrants before that time issued by certain presidents of courts martial, pursuant to the said act, and delivered to him, as such sheriff, to be executed; amounting, in the whole, to the sum of $1000; and that Ketcham neglected and refused to pay over the money, and, on the contrary thereof, converted it to his own use. It is then averred, that on the 17th October, 1825, the plaintiffs commenced a suit against Ketcham for the recovery of the money; that in August, 1826, a judgment was recovered against him for $704,56; that a *fieri facias* was issued on such judgment, which, in October, 1826, was returned *nulla bona,* whereby an action accrued against the defendants, concluding in the usual manner.

The defendant Brush *demurs* generally, and assigns the following as *special causes :* 1. That in the *first* breach it is not stated how, or in what manner Ketcham has failed to perform; 2. That the defendant, as surety for Ketcham, is not liable for monies received and held by him, unaccompanied by fraud, deceit or oppression; 3. That the bond declared on, being executed pursuant to the act concerning sheriffs, passed in 1813, the surety is not liable for monies received or collected by Ketcham as military fines, under the act to organize the militia, passed in 1818; and 4. That the names af the presidents of the courts martial are not stated, nor is it shewn by whom, or by what authority they were appointed; what species of court martial they were presidents of, nor to what corps of the militia they belonged, &c.

*S. Sherwood,* for defendant.

*G. C. Bronson,* (attorney general,) for plaintiffs.

*By the Court,* MARCY, J.   We are first to inquire what amounts to a breach of the condition of the bond.   It is said by the defendant's counsel, that the receipt of monies by Ketcham, the sheriff, and the detention of the same, would not be a breach of the bond, unless accompanied by actual fraud, deceit or oppression.   The condition of the bond in this case, conforms to the statute of 1813, relative to sheriffs, and may be broken without a positive act of fraud, deceit, or oppression.   What is the sheriff to do in order to prevent the penalty attaching to him and his sureties?   He is faithfully to execute the office without fraud, &c.   Does he fulfil this condition if he does not execute the office?   I apprehend not.   His neglect of duty is a breach of the bond, although it should not involve in it any positive act of fraud, deceit, or oppression.   To keep the bond whole, he must do his duty faithfully, and he must do it without deceit, fraud, or oppression.   That this is the true construction, is evident from other parts of the act prescribing the condition of the bond and the duties of sheriffs.   1 *R. L.* 418.   The sixth section provides that in case of a recovery by any party aggrieved against any sheriff *for any default* or misconduct in his office, the justices of the supreme court may order, at the instance of the party aggrieved, the bond to be put in suit against such sheriff and his sureties.   The legislature must therefore have considered a *default* by the sheriff in his office, a breach of the condition of the bond.   The refusing and neglecting to pay money received by him as sheriff, is such a default as is contemplated by the sixth section of the act.

But it is said the breach first assigned is too general.   The rule is that the breach is well assigned if it be in the words of the contract, either negatively or affirmatively, or in words co-extensive with the import and effect of it.   1 *Chitty's Pl.* 326.   2 *Saund.* 181, *b. c.   Comyn's Dig. tit. Pleader, c.* 45, 46.   This is not only the general, but perhaps, the universal rule, where the contract or condition of the bond provides for a single act to be done ; but where it requires many

things, the omission of any one of which would constitute a breach, a particular breach should be specified in the assignment. *Lawes on Pleading*, 262. The case of *Hughes* v. *Smith & Miller*, 5 *Johns. R.* 168, was supposed to be an authority to sustain the first breach. That was a suit on a bond given by the defendants, with a condition that Smith, who had been appointed a deputy sheriff, should, in all things, execute the office of deputy without fraud or oppression, so that the plaintiff should not be made liable for the payment of any damages or money in consequence of his acts as deputy. One of the breaches was that the plaintiff had been made liable for the payment of, and had paid, divers sums of money, to wit, $1000, in consequence of the negligence of Smith, and acts done by him. This assignment was held to be sufficient; but it is a compliance with the last rule, or rather, the exception to the general rule; for it shows a particular breach, viz: money to the amount of $1000, received by the deputy, which he had refused to account for and pay over. This assignment is very different from one which should have merely alleged that he had not, *in all things*, executed the duties of his office, &c. The object of the assignment of a breach is to apprize the party of what he is called on to answer. In *Smith and others* v. *Jansen*, 8 *Johns. R.* 111, this court held that in an action of debt on a bond, the suggestion of a breach, generally, in the words of the condition, is sufficient, without alleging particular damages. That was a case falling within the general rule; a single act was to be done to keep the condition. Smith was to remain a faithful prisoner. The suggestion, generally, in the words of the condition, showed the defendants what violation of the condition was relied on by the plaintiff. As the condition of the bond on which this action is brought, might have been broken in many ways, and by acts almost numberless, the assignment of a breach in the words of it does not appear to me to be sufficient. It does not show, as it is required to do, the subject matter of the complaint. *Skin.* 344. 7 *Price*, 550. The first breach, therefore, which only alleges that Ketcham did not well and faithfully perform and execute the

ALBANY,
Jan. 1831.

The People
v.
Brush.

office of sheriff, &c., without fraud, deceit, or oppression, but neglected and refused so to do, is too general. If it was the only breach upon the record, the inconvenience and hardship of requiring the sheriff or his sureties to come into court with no other notice, and justify his whole official conduct, would be most manifest.

But is the objection to an insufficient breach removed by other breaches that are sufficient, in the same count of the declaration? In *Pinkney* v. *The Inhabitants of East Hundred, in Rutland Co.* 2 *Saund.* 379, it was said by Saunders, counsel, and the court concurred with him in opinion, that if covenant be brought, and divers breaches are assigned, and some are good and others bad, and the defendant demur to the whole declaration, the plaintiff shall have judgment for those breaches that are well assigned, and shall be barred of the residue. If damages are assessed on the bad breach he must enter a *remittitur damna.* The same doctrine is recognized in *Orton* v. *Butler,* 5 *Barn. & Ald.* 712; 1 *Dowl. & Ryl.* 361. If this is the rule to be applied to actions of covenant, it surely must be applicable to debt on bond. If, therefore, the other breach specified in the declaration is well assigned, the plaintiffs must have judgment on the demurrer, notwithstanding the defectiveness of the first; but they will be precluded from assessing any damages under that breach.

Various objections, however, are made to the other breach. The first is, that it does not name the presidents of the courts martial who paid the money to the sheriff, or issued the warrants on which it was collected; by whom the courts were appointed; what was their character, or to what corps they belonged. All these things, so far as they are required to be shown, are sufficiently made known by the reference which is made in assigning this breach, to the provisions of the act of the 21st April, 1818, *to regulate the militia.* It certainly is not necessary in assigning breaches in an action *against a sheriff* and his sureties for not paying over money collected on several executions, to state the names, or set forth the commissions of the judges before whom the judgments were recovered. In the case of *Hughes* v. *Smith*

*& Miller*, the breach assigned was simply that the deputy had collected monies as under sheriff, which he had refused to pay. It was not stated from whom, on what writs, or in what manner the money had been received, yet this breach was held to be sufficient.

It was also urged that the sureties of Ketcham should have been notified of the suit against him, and that fact should have been stated in assigning the breach. This objection is not, I apprehend, well founded. When the plaintiffs offer the judgment against Ketcham as evidence to establish the breach assigned for not paying the monies he has collected, the question of notice may be agitated, in order to determine whether Brush, the surety, is concluded by it.

The judgment against Ketcham, it is said, was obtained for monies received by him under his appointment in 1819, *and* 1820, and the bond on which this suit is brought, only relates to his conduct under his appointment in 1819. This objection rests on an allegation which contradicts the averments in the declaration, which are admitted by the demurrer. The monies in regard to which the breaches are assigned, are charged to have been received by Ketcham, during his continuance in office under his appointment of 1819, to wit, on the 11th day of December of that year. If this could be considered an insufficient answer to the objection, there is another which I think cannot be disputed. If a part of a breach be improperly assigned, the defendant cannot demur to the whole of it. Abbot, Ch. J. says, in *Amory* v. *Brodrick*, 5 *Barn. & Ald.* 712, in answer to a demurrer to a breach which claimed direct and consequential damages, and the plaintiff was only entitled to the direct damages : "It is sufficient to say, that it is no good ground of demurrer to the whole breach, that the consequential damages are not recoverable. The plaintiff is entitled to recover some damage, and that is sufficient to support the breach." The case of *Duffield* v. *Scott*, 3 *T. R.* 374, is an authority that bears strongly on the same point. The replication in that case assigned a breach, and claimed a specific sum, a part of which, (as it is alleged in relation to the judgment recovered against Ketcham in this case,) the defendant was not

liable to pay.  Buller, J. remarks: "It is said the plaintiff has demanded three things by his replication; if he is entitled to one of these, he must have judgment."  The three things spoken of by Justice Buller, were as much a whole, as the judgment mentioned in the second breach in the declaration in this case.  The plaintiff there claimed £120, of which about £20 were costs, which the defendant contended he was not liable to pay.  Bayley, J. in commenting on that case, says: "Upon demurrer, it was argued that the replication could not be supported, because the plaintiffs had assigned a breach for the non-payment of a gross sum, part of which the defendant was not bound to pay; but it was held that the demurrer could not be supported, for the defendant was at all events answerable for the debt, and it was no objection to the action that the plaintiffs sought to recover more than they were actually entitled to."  It would seem to be established by these authorities, that it is no objection to the breach assigned by the plaintiffs here, which a demurrer can reach, that they claim the whole judgment recovered against Ketcham as an item of damages, when they are entitled only to recover for that part of it which is for the monies received by him under his appointment of 1819.  That objection will properly arise on the assessment of damages.  The plaintiffs may claim in their breach more than they are entitled to, if they also claim what they are entitled to, and the breach cannot be demurred to; but when put to their proof of damages, they can recover only such as are within the condition of the bond.

There was a ground of defence urged on the argument, which went to the entire cause of action.  The bond was given pursuant to an act passed in 1813, and the monies, for which a recovery is sought in this action against the sureties, were received and collected pursuant to an act of 1818.  The condition of the bond, the defendant insists, does not relate to such new duties as may have been imposed on sheriffs subsequently to the act directing the bond to be given.  This position appears to me to be wholly unsustainable.  The law of 1813 was *prospective;* it applied to future duties, as well as to future officers.  When the sureties, in 1819, exe-

cuted the bond which is the foundation of this suit, and became obligated that Ketcham should faithfully perform the duties of his office, they could not have had reference to such duties only as were required of a sheriff in 1813. The bond, whenever executed, referred to the duties at that time prescribed by law. If, after the bond had been given by the sureties, new duties had been imposed, and the sheriff had made default in the performance of them, a very different question might have arisen. The condition of the bond, executed by the defendants in 1819, referred to the duties then exacted of the sheriff.

Judgment for plaintiffs, with leave to defendant to amend, on payment of costs.